**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| LIGHTING SCIENCE GROUP CORP.,     ) | Case No. 1:19-cv-806-LPS |
|    ) | |
| Plaintiff,    ) | **JURY TRIAL DEMANDED** |
|    ) | |
| v.    ) | **REDACTED PUBLIC VERSION** |
|    ) | |
| GENERAL ELECTRIC COMPANY,    ) | |
| CONSUMER LIGHTING (U.S.), LLC    ) | |
| (D/B/A GE LIGHTING, LLC), and    ) | |
| CURRENT LIGHTING SOLUTIONS, LLC,    ) | |
|    ) | |
| Defendants.    ) | |

**DEFENDANTS GENERAL ELECTRIC COMPANY, CONSUMER LIGHTING (U.S.),
LLC, AND CURRENT LIGHTING SOLUTIONS, LLC'S
BRIEF IN SUPPORT OF ITS MOTION TO TRANSFER UNDER 28 U.S.C. § 1404(a)**

Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
MCCARTER & ENGLISH, LLP
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE 19801
Telephone: (302) 984-6300
mkelly@mccarter.com
dsilver@mccarter.com

*Counsel for Defendants,
General Electric Company,
Consumer Lighting (U.S.) LLC, and
Current Lighting Solutions, LLC*

Dated: June 10, 2019

## Table of Contents

**Page**

I.      Introduction ........................................................................................................... 1

II.     Background ............................................................................................................ 2

    A.      Defendants are closely related companies. ........................................... 2

    B.      The parties agreed to resolve ███████ between them ███████ ███████ .................................................................. 3

    C.      Breaching the Agreement, LSG filed an ITC complaint against Defendants. ............................................................................................. 4

    D.      Breaching the Agreement again, LSG filed the present case. ................ 5

    E.      In the face of multiple lawsuits in improper forums, Defendants filed a breach of contract action and declaratory judgment suit against LSG in the Southern District of New York. ............................................................ 5

III.    Standard ................................................................................................................. 5

IV.     This case should be transferred to the Southern District of New York for consolidation with a pending action between the parties in that District. ............ 6

    A.      Governing law ....................................................................................... 7

    B.      The ███████ is valid and enforceable. ............................................ 7

    C.      *Howmedica* step one: The ███████ applies to this action. ........... 8

        1.      Current Lighting is a signatory that may enforce ███████ .......................................................................... 8

        2.      General Electric and Consumer Lighting may also enforce █ ███ ............................................................................ 9

        3.      The ███████ covers LSG's claims ................................ 13

    D.      *Howmedica* step two: Section 1404(a) transfer analysis .................. 14

        1.      This matter might have been brought in the Southern District of New York .......................................................................... 14

        2.      The private interest factors favor transfer. ............................... 15

        3.      The public interest factors favor transfer. ................................ 17

    E.      *Howmedica* step three: Severance is inappropriate. ......................... 19

    F.      *Howmedica* step four: Efficiency, public interests, and private interests favor transfer. ...................................................................................... 20

V.      Conclusion .......................................................................................................... 20

## Table of Authorities

**Page(s)**

**Cases**

*Aetna Inc. v. Kurtzman Carson Consultants, LLC*,
   No. CV 18-470, 2019 WL 1440046 (E.D. Pa. Mar. 29, 2019)..............................................16

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*,
   No. 11 Civ. 6804, 2012 WL 527209 (S.D.N.Y. Feb. 17, 2012) ............................................15

*Anthony Allega Cement Contractor, Inc. v. Johnson Controls Fed. Sys./Versar, LLC*,
   No. CV 18-875-SRF, 2019 WL 1792201 (D. Del. Apr. 24, 2019)........................................20

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*,
   571 U.S. 49 (2013)................................................................................1, 2, 5, 6, 8, 15, 17, 20

*Cabela's LLC v. Highby*,
   No. C.A. 18-1223-RGA, 2018 WL 6168179 (D. Del. Nov. 26, 2018)..................................18

*Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*,
   952 N.E.2d 995 (N.Y. 2011)............................................................................................12, 14

*Chiste v. Hotels.com L.P.*,
   756 F.Supp.2d 382 (S.D.N.Y. 2010)....................................................................................14

*Collins v. Mary Kay, Inc.*,
   874 F.3d 176 (3d Cir. 2017)...................................................................................................7

*Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*,
   332 F. Supp. 3d 729, 754 (S.D.N.Y. 2018)..........................................................................11

*D.H. Blair & Co. v. Gottdiener*,
   462 F.3d 95 (2d Cir. 2006)...................................................................................................15

*Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*,
   99-CA-10550, 2000 WL 1277597 (S.D.N.Y. Sept. 7, 2000) ...................................................9

*Dogmoch Int'l Corp. v Dresdner Bank*,
   304 A.D.2d 396 (N.Y. App. Div. 2003) ............................................................................9, 10

*In re Exide Techs.*,
   544 F.3d 196 (3d Cir. 2008)...................................................................................................8

*Flag Wharf, Inc. v. Merrill Lynch Capital Corp.*,
   40 A.D.3d 506 (N.Y. App. Div. 2007) ..................................................................................12

**Table of Authorities**

**(continued)**

**Page(s)**

**Cases**

*Freeford Ltd. v. Pendleton*,
    53 A.D.3d 32, 757 N.Y.S.2d 557 (N.Y. App. Div. 2008) ..................................................9, 10

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009)...........................................................................................17

*Genentech, Inc. v. Amgen Inc.*,
    C.A. 17-1407-GMS, 2018 WL 503253 (D. Del. Jan. 22, 2018)............................................16

*Greenfield v. Philles Records, Inc.*,
    780 N.E.2d 166 (2002).........................................................................................................14

*In re Howmedica Osteonics Corp.*,
    867 F.3d 390 (3d Cir. 2017)....................................................................6, 8, 14, 19, 20

*Hulen v. Crane Co.*,
    No. 12 CIV. 7614 JFK, 2013 WL 4528461 (S.D.N.Y. Aug. 27, 2013) ...................................14

*Human Genome Scis., Inc. v. Genentech, Inc.*,
    No. CA 11-082-LPS, 2011 WL 2911797 (D. Del. July 18, 2011) .........................................18

*John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*,
    119 F.3d 1070 (3d Cir. 1997)...................................................................................................7

*Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*,
    337 F. Supp. 3d 274, 293 (S.D.N.Y. 2018) ("New York has a strong public
    policy of enforcing forum selection clauses so that parties are able to rely on
    the terms of the contracts they make.") ....................................................................8, 18, 19

*Martinez v. Bloomberg LP*,
    740 F.3d 211 (2d Cir. 2014)...................................................................................................7

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
    909 F.3d 48 (3d Cir. 2018)................................................................................................7, 14

*MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*,
    65 F. App'x 844 (3d Cir. 2003) ..............................................................................................8

*Nanopierce Tech., Inc. v Southridge Capital Mgt. LLC*,
    C.A. 2-cv-767, 2003 WL 22882137 (S.D.N.Y. 2003)............................................................9

# Table of Authorities

## (continued)

Page(s)

**Cases**

*NETGEAR, Inc. v. Ruckus Wireless*, *Inc.*,
C.A. 10-999-SLR, 2011 WL 3236043 (D. Del. July 28, 2011)................................16

*Olde Homestead Golf Club v. Elec. Transaction Sys. Corp.*,
714 F. App'x 186 (3d Cir. 2017) ............................................8

*Piazza Family Tr. II v. Ciarrocchi*,
C.A. 17-1704, 2017 WL 5146007 (E.D. Pa. Nov. 6, 2017)........................................6

*Plaze, Inc. v. Callas*,
No. CV 2018-0721-TMR, 2019 WL 1028110 (Del. Ch. Feb. 28, 2019) ....................8, 18, 19

*Pride Enters., Inc. v. Lewes Steel Serv.*,
No. C/A 09-330-GMS, 2010 WL 1337683 (D. Del. Mar. 31, 2010) .......................8

*RedHawk Holdings Corp. v. Craig Invs., LLC*,
No. 15 CIV. 9127, 2016 WL 6143355 (S.D.N.Y. Oct. 19, 2016) ............................9

*Roby v. Corp. of Lloyd's*,
996 F2d 1353 (2d Cir. 1993)................................................9

*Ross v. Institutional Longevity Assets LLC*,
No. C.A. 12-102, 2013 WL 5299171 (D. Del. Sept. 20, 2013) ..............................17

*Samuels v. Medytox Sols., Inc.*,
C.A. 13-7212, 2014 WL 4441943 (D.N.J. Sept. 8, 2014) .....................................20

*Smart Audio Techs., LLC v. Apple, Inc.*,
910 F. Supp. 2d 718 (D. Del. 2012)......................................16

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)................................................5

*Taidoc Tech. Corp. v. Diagnostic Devices, Inc.*,
C.A. 12-2457, 2012 WL 3627423 (E.D. Pa. Aug. 23, 2012).................................20

*TDY Indus., Inc. v. Hamilton Sundstrand Corp.*,
C.A. 7-388, 2007 WL 1740855 (W.D. Pa. June 14, 2007)....................................20

*Tourtellot v. Harza Architects, Eng'rs. & Constr. Managers*,
55 A.D.3d 1096 (3d Dep't 2008) ............................................13

**Table of Authorities**

**(continued)**

**Page(s)**

**Cases**

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008)................................................................................19

*U.S. Bank Nat'l Ass'n v Moa Hospitality, Inc.*,
   No. 0601686/2007, 2007 WL 4639452 (N.Y. Sup. Ct. Dec. 18, 2007) .................................11

*Ultravision Techs., LLC v. RMG Networks Holding Corp.*,
   No. 18-1333, 2019 WL 1985110 (D. Del. May 6, 2019) .......................................17

*W.R. Berkley Corp. v. Niemela*,
   No. 17-CV-00032-GMS, 2017 WL 4081871 (D. Del. Sept. 15, 2017)...................................18

*WD Encore Software, LLC v. The Software MacKiev Co.*,
   No. 6:15-CV-6566(MAT), 2016 WL 1056628 (W.D.N.Y. Mar. 17, 2016)...........................19

**Statutes**

28 U.S.C. § 1404(a) .............................................................................................5, 6, 14, 15

iv

## I.      Introduction

In 2017, following a protracted patent-infringement litigation, Plaintiff Lighting Science

Group Corp. ("LSG") and Defendant Current Lighting Solutions, LLC settled their dispute and

agreed to a broad ██████████████████████████ :



Ex. A, Settlement and Patent Cross-License Agreement ("Agreement") at § 13.2 ("████

██████████").[1] Having agreed to bring ████████████████████████, LSG

recently brought two disputes against Defendants **outside of** ████████. The first is this case.

The second is a complaint LSG filed with the U.S. International Trade Commission, asserting the

same claims LSG asserts here. Like the ITC action, this case is a "████████████████,"

so both cases are barred under the ████████████ to which LSG agreed. As closely

related companies, all three Defendants may enforce that clause and seek remedies for LSG's

breach of the Agreement.

Defendants have sought redress in ████████, pursuant to the ████████████

Last week, Defendants filed a breach of contract and declaratory judgment action in the Southern

District of New York. In that action, Defendants intend to move for a preliminary injunction to

enjoin LSG from continuing to prosecute both this case and the ITC investigation against

Defendants.

Because the ████████████ bars LSG's action in this District, the Court should

transfer this case to the Southern District of New York for consolidation with the pending action

there.  As the U.S. Supreme Court has instructed, the ████████████ is "given

controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist.*

---

[1] Emphasis added unless otherwise noted.

*Court for W. Dist. of Tex.*, 571 U.S. 49, 63 (2013) ("*Atlantic Marine*"). As the party violating the

████████████████, LSG bears the heavy burden of proving that "public-interest factors

overwhelmingly disfavor a transfer." *Id.* at 66. LSG cannot carry that burden.

## II.     Background

### A.      Defendants are closely related companies.

Defendant General Electric Company ("General Electric") ranks in the top twenty largest

companies in the U.S., employing nearly 100,000 Americans. *See* Declaration of Kenneth James

at ¶ 3 ("James Decl."). For over 125 years, General Electric has worked at the forefront of

innovation in the lighting and illumination field, together with its former subsidiary, Defendant

Current Lighting Solutions LLC ("Current Lighting"), and its current subsidiary, Defendant

Consumer Lighting (U.S.), LLC ("Consumer Lighting"). *Id.* at ¶ 4.

In 2017, General Electric comprised various operating segments, including the Energy

Connections & Lighting segment, which had two divisions: (1) GE Lighting and (2) Current,

powered by GE. *Id.* at ¶¶ 7-10. Both divisions worked closely with one another, including

through GE Lighting Solutions, LLC, to develop and market LED lighting products. *Id.* at ¶¶ 11-

13. The first division, GE Lighting, focused on consumer LED lighting products. *Id.* at ¶ 11. The

second, Current, powered by GE, focused on commercial and industrial LED lighting products.

*Id.* at ¶ 12.

A committee of five members, all of whom were appointed by General Electric, managed

the subsidiary GE Lighting Solutions, LLC, through which the two divisions worked closely. *Id.*

at ¶ 14. The committee members were General Electric employees, including employees working

in GE Lighting and employees working in Current, powered by GE. *Id.* Maryrose Sylvester (who

previously served as a Vice President of General Electric and head of Current, powered by GE)

served as GE Lighting Solutions, LLC's CEO. *Id.* at ¶ 16 & Ex. B-2.

In November 2018, General Electric agreed to sell its commercial lighting division, Current, powered by GE. *Id.* at ¶ 17. Before the sale, on February 6, 2018, General Electric formed Consumer Lighting (one of the Defendants in this action). *Id*. at ¶ 18. On April 1, 2019, General Electric sold Current, powered by GE, which included GE Lighting Solutions, LLC. *Id.* at ¶ 19. In connection with the sale, GE Lighting Solutions, LLC changed its name to Current Lighting Solutions, LLC (one of the Defendants in this action). *Id.* at ¶ 21 & Ex.B-3. To this day, GE's consumer lighting division, GE Lighting, operates under General Electric. *Id*. at ¶ 20.

To date, all three Defendants—General Electric, Consumer Lighting, and Current Lighting—continue to work closely together with respect to certain products. *Id*. at ¶ 22; Declaration of Inger Eckert ("Eckert Decl.") at ¶ 9. For example, Current Lighting bases significant operations on General Electric's campus in Ohio and continues to market and sell most of its products under the GE brand. James Decl. at ¶¶ 22-23; Eckert Decl. at ¶¶ 10-11.



. James Decl. at ¶¶ 22-23; Eckert Decl. at ¶ 10.

James Decl. at ¶¶ 22-23; Eckert Decl. at ¶ 10.

### B.    The parties agreed to resolve ▮▮▮▮ between them ▮▮▮▮ .

In December 2012, Current Lighting filed suit against LSG in the Northern District of Ohio, accusing certain of LSG's LED lamp products of infringing two Current Lighting patents. *See* Ex. B (*GE Lighting Sols., LLC v. Lighting Sci. Grp. Corp.*, No. 1:12-cv-03132, Dkt. No. 1 (N.D. Ohio Dec. 28, 2012) (the "Ohio Action")); Eckert Decl. at ¶ 12.

On May 7, 2017, after nearly five years of protracted litigation, Current Lighting and LSG settled the Ohio Action and entered into the Agreement (Eckert Decl. at ¶ 13), which

remains valid and enforceable (*id.* at ¶ 16). As part of the Agreement, Current Lighting and LSG

███████████████████████████████████████████████████████████████

Ex. A at §§ 2-3. These ██████████████████████████████████████. *Id.* Current

Lighting and Consumer Lighting were commonly owned by General Electric Corporation when

the Agreement was entered (James Decl. at ¶ 7), making them ████████████████

███████████████████████████████████████████████████████████████

█████████████████

   In the Agreement, the parties also agreed that █████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

Ex. A at § 13.2. Rather than limiting this ██████████████████████████████

██████████████████████████████████████████████████

### C.     Breaching the Agreement, LSG filed an ITC complaint against Defendants.

   On April 30, 2019, with no advance notice, LSG filed a lengthy complaint with the U.S.

International Trade Commission ("ITC") against General Electric and Consumer Lighting,

among many other companies. *See* Ex. C, Public Complaint in *Certain Light Emitting Diode*

*Products, Systems, and Components Thereof*, Investigation No. 337-TA-3385 (U.S.I.T.C. filed

Apr. 30, 2019) ("the ITC Action"). On May 20, 2019, LSG filed an amended ITC complaint

additionally naming Current Lighting as a proposed respondent in the ITC Action. *See* Ex. D,

Public Amended Complaint in the ITC Action. LSG's amended ITC complaint alleges patent

infringement and unfair competition claims against Defendants.

   On June 5, 2019, Defendants sent the ITC a letter requesting that it discretionarily deny

the ITC Action based on the ████████████████. *See* Ex. E. On June 7, LSG sent the ITC a

responsive letter. *See* Ex. F. The ITC Action is pending institution.

**D.      Breaching the Agreement again, LSG filed the present case.**

As the second prong of its offensive litigation campaign, LSG filed its original Complaint (D.I. 2) in this action. LSG's original Complaint named only General Electric and Consumer Lighting as Defendants. D.I. 2 at 1. On May 23, 2019, LSG filed an Amended Complaint (D.I. 12) additionally naming Current Lighting as a Defendant. D.I. 12 (Sealed) at 1. LSG's Amended Complaint alleges the same patent infringement and unfair competition claims that LSG alleges in its amended ITC complaint. *Compare id.*, *with* D.I. 5 (redacted version) at ¶¶ 21-61.

**E.      In the face of multiple lawsuits in ███████████, Defendants filed a breach of contract action and declaratory judgment suit against LSG in the Southern District of New York.**

On June 7, 2019, consistent with the ███████████, Defendants filed a complaint against LSG for breach of contract, declaratory judgment of non-infringement, and declaratory judgment of no unfair competition. Ex. G (Redacted Complaint in *General Electric Co. v. Lighting Science Group Corp.*, No. 1-19-cv-05365 (S.D.N.Y filed June 7, 2019) ("New York Action")). LSG has not answered or otherwise responded to the complaint.

## III.    Standard

The ███████████ may be enforced by a motion to transfer under 28 U.S.C. § 1404(a). *Atl. Marine*, 571 U.S. at 59 (2013). In *Atlantic Marine*, the U.S. Supreme Court explained that the traditional Section 1404(a) balancing test changes "when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* at 63 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 31 (1988)).

In this scenario, courts must "adjust their usual § 1404(a) analysis in three ways." *Atl. Marine*, 571 U.S. at 63. The district court must (1) give no weight to the forum preferred by LSG, which is "the party defying the forum-selection clause"; (2) deem the private interests to "weigh entirely in favor of the preselected forum" because the parties agreed to the preselected

275881c6274843bf

forum and thereby waived the right to challenge it as inconvenient; and (3) proceed to analyze only public interests. *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 402 (3d Cir. 2017) (quoting *Atl. Marine*, 867 U.S. at 63-67) ("*Howmedica*"). But "[b]ecause [the public interest factors] will rarely defeat a transfer motion, the practical result [of this altered analysis] is that forum selection clauses should control except in unusual cases." *Id.* at 64.

In *Howmedica*, the Third Circuit set forth a framework for applying *Atlantic Marine* when both signatories and non-signatories to a forum-selection clause appear as defendants in an action filed outside of the agreed-to forum:

(1) The court assumes that *Atlantic Marine* applies to parties who agreed to forum-selection clauses and that, "[i]n all but the most unusual cases," claims concerning those parties should be litigated in the fora designated by the clauses;

(2) For non-signatories, the private interest factors are not deemed to "weigh entirely in favor of the preselected forum" as in *Atlantic Marine*; rather, the court analyzes both the relevant private and public interests as to the non-signatories parties, "just as when adjudicating a § 1404(a) transfer motion involving those parties in the absence of any forum-selection clauses";

(3) If the forum-selection clause points to a forum for the signatories that differs from the forum to which the private and public interest factors point for the non-signatories, then the court considers whether severance is warranted to cure any jurisdictional or procedural defects; and

(4) Finally, if severance is improper or unwarranted, the court may exercise discretion to choose the most appropriate forum for non-signatory defendants based on efficiency and the non-signatories' interest.

*Howmedica*, 867 F.3d at 404-05; *see Piazza Family Tr. II v. Ciarrocchi*, C.A. 17-1704, 2017 WL 5146007, at *6 (E.D. Pa. Nov. 6, 2017) (discussing framework).

## IV.     This case should be transferred to the Southern District of New York for consolidation with a pending action between the parties in that District.

The ███████████████ means what it says: ██████████████████████

██████████████████████████████████████████████████████████████

Ex. A at § 13.2. This clause bars ████████████████. And all three Defendants may enforce this

clause against LSG because each Defendant is a signatory or closely related to a signatory. As such, LSG breached the Agreement and this action should be transferred to the Southern District of New York for consolidation with the New York Action.

### A.      Governing law

"Federal law controls the question of whether to enforce a forum selection clause." *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 58 (3d Cir. 2018). An inquiry into the clause's enforcement, however, differs from an inquiry into its scope. *Id.* at 58. "The question of the scope of a forum selection clause is one of contract interpretation." *John Wyeth & Brother Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1073 (3d Cir. 1997). As such, state law "typically governs whether the clause covers a particular claim, as well as whether the clause applies to a non-signatory as an intended beneficiary or closely related party." *McGraw-Hill*, 909 F.3d at 58; *see Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180 (3d Cir. 2017) (quoting *Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014)).

"Parties are generally free to specify which law governs a contract's interpretation, and may agree to modify the choice specified in the contract." *McGraw-Hill*, 909 F.3d at 58. Here, the parties agreed that ███████████████████████████████████████████████████████ ████████████████████████████████████████ Ex. A at § 13.2.

Therefore, the law applies as follows: (i) federal law governs whether the ███████ ████████████ is valid and enforceable; (ii) ████████████████ whether Defendants may enforce the ████████████████ and whether the ████████████████████████████; and (iii) federal law again governs whether the ████████████████ should be enforced.

### B.      The ████████████████ is valid and enforceable.

"A forum-selection clause is presumptively valid and will be enforced unless the party objecting to its enforcement demonstrates that enforcement of the clause would violate a strong

public policy of the forum." *Olde Homestead Golf Club v. Elec. Transaction Sys. Corp.*, 714 F. App'x 186, 190 (3d Cir. 2017) (quoting *In re Exide Techs.*, 544 F.3d 196, 218 n.15 (3d Cir. 2008) (citations omitted)).  As such, "[a] forum selection clause in a signed agreement between two parties is generally enforced. *Pride Enters., Inc. v. Lewes Steel Serv.*, No. C/A 09-330-GMS, 2010 WL 1337683, at *3 (D. Del. Mar. 31, 2010).  Indeed, "a valid forum-selection clause [should be] given controlling weight *in all but the most exceptional cases*." *Atl. Marine*, 571 U.S. at 63; *Olde Homestead*, 714 F. App'x at 190.

LSG cannot overcome the ███████████ presumption of validity. There is no evidence that LSG was fraudulently induced into accepting the ███████████ . *See MoneyGram Payment Sys., Inc. v. Consorcio Oriental, S.A.*, 65 F. App'x 844, 846–47 (3d Cir. 2003). Nor can LSG demonstrate █████ violates public policy of either Delaware or New York. Courts within each state have upheld forum selection clauses as compliant with public policy. *See, e.g.*, *Lazare Kaplan Int'l Inc. v. KBC Bank N.V.*, 337 F. Supp. 3d 274, 293 (S.D.N.Y. 2018) ("New York has a strong public policy of enforcing forum selection clauses so that parties are able to rely on the terms of the contracts they make."); *Plaze, Inc. v. Callas*, No. CV 2018-0721-TMR, 2019 WL 1028110, at *3 (Del. Ch. Feb. 28, 2019) ("Delaware law favors the enforcement of valid forum-selection clauses.").

**C.** *Howmedica* **step one: The** ███████████ **applies to this action.**

Under New York law, all three Defendants have standing to enforce ███████████



**1.** **Current Lighting is a signatory that may enforce the** ███████████
███

Defendant Current Lighting may enforce the ███████████ against LSG because Current Lighting is a signatory to the Agreement. When the Agreement was signed,

8

Current Lighting operated under the name "GE Lighting Solutions, LLC" and was a subsidiary of General Electric Company. Eckert Decl., ¶¶ 14-15; *see* James Decl., ¶ 21. On April 1, 2019, GE Lighting Solutions, LLC was sold and changed its name to Current Lighting Solutions. *Id.*

### 2.    General Electric and Consumer Lighting may also enforce ██████

General Electric and Consumer Lighting may also enforce the ████████ for two reasons. First, both entities are closely related to Current Lighting, one of the Agreement's signatories. Second, both entities are "parties" under the ████████.

### a.    General Electric and Consumer Lighting are closely related.

Under New York law, "a nonparty" to a contract "that is 'closely related' to one of the [Agreement's] signatories can enforce a forum selection clause." *See Freeford Ltd. v. Pendleton*, 53 A.D.3d 32, 39, 757 N.Y.S.2d 557 (N.Y. App. Div. 2008); *Dogmoch Int'l Corp. v Dresdner Bank*, 304 A.D.2d 396, 397 (N.Y. App. Div. 2003) ("Although defendant was a nonsignatory to the account agreements, it was reasonably foreseeable that it would seek to enforce the forum selection clause given the close relationship between itself and its subsidiary, Dresdner Schweiz."). Indeed, it is well established that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *RedHawk Holdings Corp. v. Craig Invs., LLC*, No. 15 CIV. 9127, 2016 WL 6143355, at *4 (S.D.N.Y. Oct. 19, 2016).

Parties are "closely related" if the non-signatory is an "'intended beneficiar[y] entitled to enforce the clause in question." *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, 99-CA-10550, 2000 WL 1277597, at *3 (S.D.N.Y. Sept. 7, 2000) (quoting *Roby v. Corp. of Lloyd's*, 996 F2d 1353, 1358 (2d Cir. 1993)). "While it may be true that third-party beneficiaries to a contract would, by definition, satisfy the 'closely related' and 'foreseeability' requirements, a third-party beneficiary status is not required." *See Nanopierce Tech., Inc. v Southridge Capital Mgt. LLC*, C.A. 2-cv-767, 2003 WL 22882137, at *5 (S.D.N.Y. 2003) (citation omitted).

General Electric and Consumer Lighting may enforce the ███████████ because they are closely related to the Agreement's signatory Current Lighting. When the Agreement was executed, Current Lighting was a subsidiary of General Electric. Eckert Decl., ¶¶ 14-15. Although General Electric no longer owns Current Lighting (as of April 1, 2019), General Electric, Current Lighting, and Consumer Lighting still operate on the same campus, work closely together on certain products, ████████████████████ ████████████████████████████████████████████ ████████████. *Id.*, ¶¶ 9-11; James Decl., ¶¶ 22-24. In fact, Current Lighting continues to market and sell certain products under the GE brand. Eckert Decl., ¶¶ 10; James Decl., ¶ 24.

That LSG's "own complaint alleges facts that would support the requisite close relationship" shows all Defendants may assert the ███████████████. *See Dogmoch*, 304 A.D.2d at 397 (finding "Plaintiffs' own complaint alleges facts that would support the requisite close relationship" sufficient for a non-signatory to assert a forum-selection clause). For example, in its Amended Complaint (D.I. 12) and amended ITC complaint (Ex. C), LSG alleges:

- On information and belief, Current, directly or through its affiliates, including through one or more of the GE Respondents . . ." Ex. C at 23.

- Current is a former subsidiary of General Electric Company. As of April 1, 2019, it is a separate business, but is still branded as "Current, powered by GE." "Under a long-term licensing agreement, Current will continue using the GE brand on its products and services moving forward." D.I. 12 (Sealed) at ¶ 15.

- On information and belief, Current then imports and sells those Accused Products in the United States, including through one or more of the GE defendants. *Id.* at ¶ 16.

- General Electric Company controls the products sold by GE Lighting [Consumer Lighting], and controls or acts jointly with GE Lighting [Consumer Lighting] and Current in the marketing and sale of the accused products. *Id.* at ¶ 19.

To be sure, LSG had every reason to foresee General Electric and Consumer Lighting would seek to enforce the ██████████████. *See Freeford*, 53 A.D.3d at 39 (finding

nonparty to an agreement was closely related to signatory because "enforcement of the [forum-selection] clause is foreseeable by virtue of the relationship between them"). In the Agreement, LSG ███████████████████████████████████████. Ex. A at § 3.1. LSG also ██████████████████████████████████████ *Id.* at § 3.2. And LSG agreed to ███████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████ *Id.* at § 4.2. LSG's ███████ ███████████████████████████████████████████████ provide LSG every reason to foresee that those Defendants would enforce the ███████████████.

Because General Electric and Consumer Lighting are closely related to the Agreement's signatory Current Lighting, each Defendant has standing to enforce the ████████████████.

### b. General Electric and Consumer Lighting are ███████ under the ███████████████████.

Separately, all three Defendants may enforce the ████████████████ because each Defendant is ███████████████████. Ex. A at § 13.2 ("███████████████████████ ██████████████████████████████████████████████████████████████.").

By using the plain language ███████████████████ rather than ██████████████ █████████████████ the ███████████████ applies broadly to the plain and ordinary meaning of ███████ *See U.S. Bank Nat'l Ass'n v Moa Hospitality, Inc.*, No. 0601686/2007, 2007 WL 4639452 (N.Y. Sup. Ct. Dec. 18, 2007) ("Throughout the indenture, the defined terms are capitalized and when the parties wanted to use 'Net Proceeds' as a defined term, they capitalized it. In Section 4.14(g) 'net proceeds' is not capitalized, and, thus, in this context, the parties intended the term 'net proceeds' to have its plain and ordinary meaning.").

Under New York law, courts commonly "refer to the dictionary to determine the plain and

11

ordinary meaning of words to a contract." *Consumer Fin. Prot. Bureau v. RD Legal Funding, LLC*, 332 F. Supp. 3d 729, 754 (S.D.N.Y. 2018) (referencing Merriam Webster's Dictionary to determine the plain meaning of contract terms). Merriam Webster defines ███ as "a person or group participating in an action or affair." Ex. H.

General Electric, Current Lighting, and Consumer Lighting are all "participating" in the Agreement or "affair" because each owes obligations and receives rights under Agreement. ███ ████████████████████████████████████████████ LSG. Ex. A at §§ 2.1-2.2 & 3.1-3.2. ████████████████████████████████. *Id.* at §§ 4.1-4.2. These provisions confirm each Defendant is a █████ under the ████████████.

Indeed, when the Agreement's drafters ████████████████████████ ████████████████████████████ *See, e.g.*, Ex. A at § 5.3 ████████████████████████████████; *id.* at § 6.2 ████████ ████████████████████████████████████ ████ Unlike these provisions, the ████████████████████ participating in the Agreement, including the signing █████—Current Lighting and LSG—and █████, such as General Electric and Consumer Lighting.  Thus, to restrict █████ to the signatories would be to "interpret an agreement as impliedly stating something which the parties have neglected to specifically include." *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 952 N.E.2d 995, 1001 (N.Y. 2011) ("courts should be extremely reluctant to interpret an agreement").

Restricting █████ to the Agreement's signatories would be especially improper here because the Agreement was "negotiated between sophisticated, counseled commercial entities." *See Flag Wharf, Inc. v. Merrill Lynch Capital Corp.*, 40 A.D.3d 506, 507 (N.Y. App. Div. 2007) ("Courts will not rewrite contracts that have been negotiated between sophisticated, counseled

commercial entities such as Mercann and defendant."). Indeed, the Agreement confirms ███ ████████████████████████████████████████████████████ Ex. A at § 13.5.

Because each Defendant is a ████ under the ████████ each Defendant may assert that clause against LSG.

**3.    The ████████ covers LSG's claims**

By its unambiguous terms, the ████████ broadly applies t ████████ ████████████████████████ Ex. A at § 13.2. This language is broad and independent of the nature of ████. Court have found **even** ████ forum selection clauses to be "broad and unequivocal" such that their applicability "does not turn on the … nature of the dispute" between the parties. *See Tourtellot v. Harza Architects, Eng'rs. & Constr. Managers*, 55 A.D.3d 1096, 1098 (3d Dep't 2008) (holding that forum selection clause covering "any dispute **arising under or in connection with their agreement**" was "broad and unequivocal" such that its applicability "does not turn on the . . . nature of the dispute" between the parties). It follows that the **even-broader** ████████ applies ████████ ████████. *See also Bernstein*, 77 A.D.3d at 250 (holding that the "applicability of the forum selection clause [did] not turn on the type or nature of the dispute between the parties" because, "by its express language, [it] applie[d] to 'any dispute.'").

To be sure, ████ in the ████████ carries a broad meaning. The plain meaning of ████ is "verbal controversy" or "quarrel." Ex. H. That definition applies here because LSG alleges Defendants have infringed five LSG patents and injured LSG by falsely advertising that their products meet Energy Star criteria. *See generally* D.I. 12 (Sealed).

In its letter to the ITC, LSG argues the ████████ is limited to ████ ████████████████████ Ex. F at 3. But the ████████ ████ contains no such restriction. *See* Ex. A at § 13.2. As LSG admits, "[t]he best evidence of

13

ME1 30636608v.1

what parties to a written agreement intend is **what they say in their writing**." Ex. F at 2

(quoting *Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (2002)). What the parties said

in the ███████████████ is clear and unambiguous: it governs ███████████████

███████ period. If the parties wanted to limit the ███████████████████████████

"specifically directed to the Settlement Agreement" (as LSG urges), they would have mentioned

████████████████████████████████████████████████████████████████████████.

*See, e.g.*, Ex. A at § 5.1 ████████████████████████████████ § 4.2

████████████████████████████████████████████████████

██████████ § 13.2 ████████████████████████████████████████

██████████████████████████████████ Because the ████████████████

██████ is not so limited, the Court should decline to interpreted this clause "as impliedly stating

something which the parties have neglected to specifically include." *Centro*, 952 N.E.2d at 1001.

     Therefore, under New York law, the ███████████████ (i) may be enforced by

Defendants, and (ii) covers the claims LSG asserts here. *See McGraw-Hill*, 909 F.3d at 58.

    **D.**   *Howmedica* **step two: Section 1404(a) transfer analysis**

       **1.**    **This matter might have been brought in the Southern District of New York**

    Under Section 1404(a), a court first determines whether the matter "might have been

brought" in the transferee district. *Hulen v. Crane Co.*, No. 12 CIV 7614 JFK, 2013 WL

4528461, at *3 (S.D.N.Y. Aug. 27, 2013). An action may be brought "in any district where

subject-matter and personal jurisdiction exist and where venue is proper." *Chiste v. Hotels.com*

*L.P.*, 756 F. Supp. 2d 382, 399 (S.D.N.Y. 2010) (citation omitted).

    If LSG had brought this action in the Southern District of New York, subject matter

jurisdiction would have existed, as it does here, under 28 U.S.C. §§ 1331 and 1338(a). And

venue would have been proper under 28 U.S.C. §§ 1391(b), 1391(c), and 1400.

The Southern District of New York would also have personal jurisdiction over the parties because they consented to the ████████████████████. *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."). As such, "it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. v. Am. Boat Co., LLC*, No. 11 Civ. 6804, 2012 WL 527209, at *2 (S.D.N.Y. Feb. 17, 2012) (citation omitted).

Therefore, the threshold requirements for transfer under Section 1404(a) are met.

## 2. The private interest factors favor transfer.

As discussed above, each Defendant may enforce the ████████████████████. Thus, LSG's choice of forum "merits no weight," and the Court need only consider the public interest factors. *Atl. Marine*, 571 U.S. at 63-64. In any event, the private interest factors favor transfer.

**Plaintiff's forum preference.** LSG's choice of forum "merits no weight" because LSG's pursuit of this action in Delaware materially breaches the ████████████████. *Atl. Marine*, 571 U.S. at 63-64. ████████ is "treated as a manifestation of [its] preference[] as to a convenient forum." *See Jumara*, 55 F.3d at 880. As such, the Third Circuit has made clear that, "[w]hile courts normally defer to a plaintiff's choice of forum, such deference is inappropriate where the plaintiff has already freely contractually chosen an appropriate venue." *Id.* at 880. Therefore, this factor does not apply.

**Defendant's forum preference.** Defendants' choice of forum, New York, strongly favors transfer. Indeed, Defendants are ████████████████████████████ under the ████████████. *See* Ex. A at § 13.2.

**Where the claim arose.** This factor is neutral where, as here, the defendants "operate[]

15

on a national or global scale." *Genentech, Inc. v. Amgen Inc.*, C.A. 17-1407-GMS, 2018 WL 503253, at \*4 (D. Del. Jan. 22, 2018).

**Convenience of the parties.** This factor is also neutral. For example, LSG alleges that Consumer Lighting and Current Lighting are incorporated in Delaware but have their principal places of business at 1975 Noble Road, Cleveland, OH. D.I. 12 (Sealed) at ¶¶ 10, 14. LSG further alleges that GE is incorporated in New York and headquartered in Massachusetts. *Id.* at ¶ 8.  And although LSG is a Delaware entity, its principal place of business is in Florida. *Id.* at ¶ 6. Thus, whether the litigation proceeds in Delaware or New York, all parties will be inconvenienced to some degree to the extent they will be forced to litigate away from their principal places of business. "But there is no indication that litigating away from home will be more inconvenient or burdensome for one of the parties, based on their respective physical and financial conditions." *See Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. CV 18-470, 2019 WL 1440046, at \*8 (E.D. Pa. Mar. 29, 2019). Therefore, this factor is neutral.

**Convenience of the witnesses.** This factor is neutral.  There is no reason to believe any witness will decline to appear in either forum absent a subpoena. *See Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 726 (D. Del. 2012) ("[T]his factor is only given weight when there is some reason to believe that a witness actually will refuse to testify absent a subpoena.").

**Location of books and records.** Because the relevant books and records are likely spread across the country, this factor does not point to a single forum either. As discussed above, the parties' principal places of business are located in Ohio, Massachusetts, and Florida. D.I. 12 (Sealed) at ¶¶ 6, 8, 10, 14. Moreover, given the uses of modern technology in discovery, this factor's ultimate significance may be limited. *See, e.g.*, *NETGEAR, Inc. v. Ruckus Wireless*, *Inc.*, C.A. 10-999-SLR, 2011 WL 3236043, at \*4 (D. Del. July 28, 2011). Thus, this factor is neutral.

**The sum of the private interest factors.** On balance, the private interest factors weigh in favor of a transfer. One factor strongly favors a transfer. The rest are neutral or inapplicable.

### 3.    The public interest factors favor transfer.

The public interest factors "rarely defeat a transfer motion" where, as here, ██████████ ██████████ applies. *Atl. Marine*, 571 U.S. at 64. "In all but the most unusual cases," the "'interest of justice' is served by holding parties to their bargain." *Id.* at 66. This case is no exception.

**Enforceability of judgment.** This factor is neutral because judgments from this District and the Southern District of New York would be "equally enforceable." *Ultravision Techs., LLC v. RMG Networks Holding Corp.*, No. 18-1333, 2019 WL 1985110, at *3 (D. Del. May 6, 2019).

**Practical considerations.** The court also weighs "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Neither Delaware nor New York would be easier or less expensive given their short distance apart and relatively equal proximity to the parties, witnesses, and evidence that is spread across Ohio, Massachusetts, and Florida. It will be more efficient to litigate the parties' dispute in the New York Action because that action involves not only the same claims LSG alleges here, but also claims for LSG's breach of the Agreement. *See Ross v. Institutional Longevity Assets LLC*, No. C.A. 12-102, 2013 WL 5299171, at *13 (D. Del. Sept. 20, 2013) ("[O]ur Court has often cited the existence of related lawsuits in one of the fora at issue as being an important practical consideration to be taken into account.") (internal quotation marks and citation omitted). Thus, this factor favors transfer.

**Relative administrative difficulty.** Although relative congestion of the forum court compared to the requested transferee court may bear on administrative difficulties, it is generally non-dispositive. *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). The most recent report from the Administrative Offices of the U.S. Courts on behalf of the Federal Judiciary

17

indicates that the Southern District of New York had 19,239 pending cases, and the District of

Delaware had 2,383 pending cases. *See* U.S. District Courts – National Judicial Caseload Profile

(Dec. 31, 2018), https://www.uscourts.gov/sites/default/files/fcms_na_ distprofile1231.2018.pdf.

Notably, however, there are twenty-two district court judges in the Southern District of New

York and only five judges in the District of Delaware to cover each district's respective caseload.

*Compare* U.S. District Court – Southern District of New York, U.S. District Judges,

http://www.nysd.uscourts.gov/judges/District (last visited June 8, 2019), *with* U.S. District Court

– District of Delaware, Judges, https://www.ded.uscourts.gov/judges (last visited June 8, 2019).

Thus, this factor is neutral.

 **Local interest.** Delaware's interest in addressing a suit against Delaware corporations is

not "on par" with the type of public interests "that courts have found sufficient to overcome a

forum-selection clause under *Atlantic Marine*." *Cabela's LLC v. Highby*, No. C.A. 18-1223-

RGA, 2018 WL 6168179, at *5 (D. Del. Nov. 26, 2018) (collecting cases); *W.R. Berkley Corp. v.

Niemela*, No. 17-CV-00032-GMS, 2017 WL 4081871, at *5 (D. Del. Sept. 15, 2017) ("The mere

potential interest California may have" where one party is present in California "is not enough to

warrant overriding the agreed to forum selection clause."). If anything, the local interests of both

Delaware and New York favor transfer given their analogous interests in ███████████████

███████████████ *See, e.g.*, *Lazare*, 337 F. Supp. 3d at 293; *Plaze*, 2019 WL

1028110, at *3.  Still yet, this factor is typically neutral in patent litigation, where "patent issues

do not give rise to a local controversy or implicate local interests." *Human Genome Scis., Inc. v.

Genentech, Inc.*, No. CA 11-082-LPS, 2011 WL 2911797, at *11 (D. Del. July 18, 2011) (citation

omitted). Thus, this factor either is neutral or slightly favors transfer.

 **Public policies of the fora.** Enforcing the ███████████████ would uphold the

public policies of both fora, not contravene it. *See, e.g., Lazare*, 337 F. Supp. 3d at 293 ("New York has a strong public policy of enforcing forum selection clauses so that parties are able to rely on the terms of the contracts they make."); *Plaze*, 2019 WL 1028110, at *3 ("Delaware law favors the enforcement of valid forum-selection clauses."). Thus, this factor favors transfer.

**Familiarity of the trial judge.** This factor is neutral because LSG's patent infringement and false advertising claims are governed by federal law, which both courts are equally capable of applying. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (patent infringement claims "are governed by federal law, and as such both [courts are] capable of applying patent law to infringement claims" (internal quotation marks and citation omitted)); *WD Encore Software, LLC v. The Software MacKiev Co.*, No. 6:15-CV-6566(MAT), 2016 WL 1056628, at *4 (W.D.N.Y. Mar. 17, 2016) (finding that "the relative familiarity with the governing law, favors neither forum" where Lanham Act "governs the main dispute between the parties in this case").

**The sum of the public interest factors.** On balance, the public interest factors are mostly neutral and, in some instances, favor transfer. Accordingly, LSG cannot meet its burden to show that the public interest factors amount to "extraordinary circumstances" sufficient to outweigh the controlling ████████████████ and transfer is appropriate.

**E.     *Howmedica* step three: Severance is inappropriate.**

*Howmedica*'s first and second steps point to one forum only: New York. As such, the inquiry ends there, and the Court should transfer this action. *Howmedica*, 867 F.3d at 404.

But even if the Court determines that the private and public interests point to a different forum for the non-signatories (GE and Consumer Lighting) than the forum required for the signatories (Current Lighting and LSG), severance is not the answer. *See id.*  It would be inefficient and ineffective to fragment this action such that (i) claims against Current Lighting (a signatory) are transferred, but (ii) the same claims against remaining defendants (non-signatories

19

but closely related) remain in this District. "Doing so 'would result in inefficient and duplicative litigation.'" *Anthony Allega Cement Contractor, Inc. v. Johnson Controls Fed. Sys./Versar, LLC*, No. CV 18-875-SRF, 2019 WL 1792201, at *11 (D. Del. Apr. 24, 2019) (citation omitted).

### F.      *Howmedica* step four: Efficiency, public interests, and private interests favor transfer.

Because severance is inappropriate, the Court considers "efficiency interests in avoiding duplicative litigation," including "the non-contracting parties' private interests and any prejudice that a particular transfer decision would cause with respect to those interests." *Howmedica*, 867 F.3d at 405 (internal citations omitted).

There are no public interests that "'overwhelmingly' outweigh[]" the judicial efficiency and relevant private interests that warrant transfer, as discussed *supra*.[2] *Id.* at 405 (citing *Atl. Marine*, 571 U.S. at 66). Indeed, transferring the action to New York would not prejudice the parties when they specifically agreed to litigate any dispute arising between them in that forum. Therefore, "the strong public interest in upholding the contracting parties' settled expectations" requires transferring the case in its entirety. *Id.*

## V.      Conclusion

The Court should transfer this action to the Southern District of New York.

---

[2] The first-to-file rule does not change the result. *See, e.g.*, *Samuels v. Medytox Sols., Inc.*, C.A. 13-7212, 2014 WL 4441943, at *10 (D.N.J. Sept. 8, 2014) ("[T]he presence of a single forum selection clause will almost always render the first-to-file rule inapplicable. The reason for this exception is, of course, to prevent a plaintiff from taking advantage of the first-to-file rule by first filing a lawsuit in a forum that the forum selection clause does not permit."); *Taidoc Tech. Corp. v. Diagnostic Devices, Inc.*, C.A. 12-2457, 2012 WL 3627423, at *3 (E.D. Pa. Aug. 23, 2012) (granting motion to transfer and explaining that "[t]o apply the first-to-file rule mechanically in a case like this one would endorse a litigation tactic calculated to avoid a forum selection provision"). In any event, the first-to-file rule's applicability is for the transferee court to decide. *See TDY Indus., Inc. v. Hamilton Sundstrand Corp.*, C.A. 7-388, 2007 WL 1740855, at *1 (W.D. Pa. June 14, 2007) (discussing Third Circuit approach).

Dated: June 10, 2019

Respectfully submitted,

MCCARTER & ENGLISH, LLP

 */s/ Daniel M. Silver*
Michael P. Kelly (#2295)
Daniel M. Silver (#4758)
Renaissance Centre
405 N. King Street, 8th Floor
Wilmington, DE  19801
(302) 984-6300
mkelly@mccarter.com
dsilver@mccarter.com

*Counsel for Defendants General Electric Company,*
*Consumer Lighting (U.S.), LLC d/b/a GE Lighting,*
*LLC, and Current Lighting Solutions, LLC*

21